# STATE OF MICHIGAN

# COURT OF APPEALS

HANNA[1] H. YOUSIF and BENHAM SHAMOON,

Plaintiffs-Appellants/Cross-Appellees,

v

ROBERT M. BIRACH, ROBERT M. BIRACH, P.C., and CHARFOOS GIOVAN & BIRACH,

Defendants-Appellees/Cross-Appellants.

UNPUBLISHED
February 18, 2016

No. 324097
Wayne Circuit Court
LC No. 12-010855-NM

Before: CAVANAGH, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Plaintiffs Hanna H. Yousif and Benham Shamoon appeal as of right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(10) in this legal malpractice action. We affirm.

## I. FACTUAL BACKGROUND

Plaintiffs are naturalized Canadian citizens who were born in Iraq. In 2002, Shamoon consulted defendant Robert Birach, an attorney specializing in immigration, regarding visas to reside in the United States. According to plaintiffs, Birach was aware that they were living in Michigan and that their children were attending school there despite their Canadian citizenship. Birach advised Shamoon that he and his family could qualify for E-2 treaty investor visas if he made a substantial investment in an American business employing at least two full-time employees who were American citizens or permanent residents. Shamoon did not request further

---

[1] There is a discrepancy in the spelling of plaintiff Hanna Yousif's first name in both the lower court record and the record on appeal. In this opinion, we will spell her name in accordance with the spelling used in the transcripts and orders in the lower court file, which is consistent with spelling utilized in plaintiffs' claim of appeal and plaintiffs' brief on appeal.

-1-

services from Birach at that time.  In 2004 or 2005, Shamoon and Yousif purchased a restaurant in Detroit, Michigan.  They entered the transaction without calling or consulting with Birach.

In 2006, plaintiffs again contacted Birach about visa applications.  Birach provided them with a list of documents that they needed to provide in order to establish eligibility for the E-2 visas, including, *inter alia*, financial records and documents verifying that the business employed at least two full-time employees.  Between 2006 and 2009, Birach made at least five written requests for these documents, during which he periodically asked for confirmation that Shamoon still wished, and had the means, to utilize Birach's legal services for filing the visa applications. Plaintiffs never provided all of the requested documents.

In September 2010, a fire destroyed the restaurant.  Subsequently, plaintiffs' insurance claim for the fire loss was denied.[2]  Then, on December 29, 2010, Shamoon was detained when he attempted to reenter the United States from Niagara Falls, Canada.  With his brother, he initially lied about his reasons for entering the United States, claiming that he was entering the country to do some shopping.  However, U.S. Customs and Border Protection officials ultimately determined that Shamoon was an undocumented alien illegally residing in the United States.  He was excluded from entering the United States and barred from reentering for five years.

Plaintiffs brought this legal malpractice action against defendants, alleging that Birach was negligent in failing to advise them that they could not legally reside in the United States before their visa applications were approved.  They attributed their financial losses to Birach's advice to invest in a business in the United States, even though they could not qualify for E-2 visas as long as they resided in the United States and were subject to immediate removal due to their unlawful status.  Likewise, they ascribed their noneconomic losses arising from Shamoon's removal from the United States to Birach's failure to advise them of the potential consequences for continuing to reside unlawfully in the United States and crossing the Canada-United States border.  The trial court granted defendants' motion for summary disposition pursuant to MCR 2.116(C)(10), and denied plaintiff's cross-motion for summary disposition pursuant to MCR 2.116(I)(2), on the ground that Birach's alleged professional negligence was not the proximate cause of plaintiffs' losses.

## II.  STANDARD OF REVIEW

This Court reviews *de novo* a trial court's decision on a motion for summary disposition. *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011).  "[A] motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint . . . ."  *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012).  In deciding the motion, the trial court "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion."  *Id.*  "[T]he court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial."

---

[2] Although unclear from the record, it appears that the City of Detroit may have foreclosed on the property for unpaid property taxes following the fire.

*Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2 (1999). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County,* 287 Mich App 406, 415; 789 NW2d 211 (2010).

Summary disposition is warranted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Greene v AP Prod, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006) (quotation marks and citation omitted). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party," *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008), or if "the evidence submitted might permit inferences contrary to the facts as asserted by the movant," *Dillard v Schlussel*, 308 Mich App 429, 445; 865 NW2d 648 (2014), quoting *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360, 320 NW2d 836 (1982) (quotation marks omitted).

"Generally, proximate cause is a factual issue to be decided by the trier of fact. However, if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law." *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002).

## III. APPLICABLE LAW

"The elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) negligence in the legal representation of the plaintiff; (3) that the negligence was the proximate cause of an injury; and (4) the fact and extent of the injury alleged." *Manzo v Petrella*, 261 Mich App 705, 712; 683 NW2d 699 (2004). To establish proximate cause, two elements must be proven: cause in fact and legal cause. *Skinner*, 445 Mich at 162-163. In general, to prove cause in fact, a plaintiff must "show[] that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Id.* at 163. If cause in fact is established, the issue becomes whether the defendant's actions were the legal cause of the injury. *Id.*

To establish that defendant's actions were the legal cause of the injury, "the plaintiff must show that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Weymers v Khera*, 454 Mich 639, 648; 563 NW2d 647 (1997) (quotation marks and citation omitted; alterations in original). As such, "[l]egal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner*, 445 Mich at 163. "Foreseeable intervening forces [include those] within the scope of the original risk, and hence of the defendant's negligence." *Moning v Alfono*, 400 Mich 425, 441; 254 NW2d 759 (1977) (quotation marks and citation omitted). "Proximate cause draws the line of liability at the probable and natural results of a defendant's negligent act." *Adas v Ames Color-File*, 160 Mich App 297, 303; 407 NW2d 640 (1987); see also *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496; 791 NW2d 853, 858 (2010) ("In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct.").

As explained in *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157-158; 871 NW2d 530 (2015):

> [T]he chain of causation between the defendant's conduct and the plaintiff's injuries may be broken by an intervening or a superseding cause. An "intervening cause" is " 'one which actively operates in producing harm to another after the actor's negligent act or omission has been committed.' " *McMillian* [*v Vliet*], [422 Mich 570, 576; 374 NW2d 679 (1985)] (citation omitted). "An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was 'reasonably foreseeable.' " *Id.* Thus, the issue of proximate causation requires focusing on "whether the result of conduct that created a risk of harm and any intervening causes were foreseeable." *Jones v Detroit Med Ctr,* 490 Mich 960, 960 (2011).

*Black's Law Dictionary* (10th ed) defines "foreseeability" as "[t]he quality of being reasonably anticipatable."

Based on these principles, in the context of a "bad advice" legal malpractice claim, the plaintiff must establish that "but for" the erroneous advice, the plaintiff would not have undertaken the action that led to the adverse outcome, *and* that the resulting harm was the foreseeable, probable, and natural result of the plaintiff's reliance on the erroneous advice.

## IV. APPLICATION

Here, plaintiffs assert two adverse outcomes allegedly caused by Birach's faulty advice: (1) the loss of their investment in the restaurant; and (2) Shamoon's removal from the United States. The trial court concluded that the fire was an intervening cause that precluded plaintiffs' legal malpractice action, and that Shamoon's removal was the result of his own misrepresentation of his status and reasons for entering the country "because he knew [that] he could be removed, which had nothing to do with Birach's representation of [p]laintiffs." Thus, the court concluded that plaintiffs failed to establish that Birach's alleged malpractice was the proximate cause of their injuries. We agree.

## A. LOSS OF INVESTMENT

Plaintiffs first argue that Birach's negligent advice caused them to lose their investment in the restaurant. They contend that they would not have made the investment but for Birach's recommendation that they would qualify for E-2 visas by investing in an American business and employing two full-time employees. However, there is no causal nexus between Birach's alleged recommendation and the fire that caused plaintiffs' financial loss. As a result, despite plaintiffs' framing of their argument, their claim actually is based purely on but-for causation, without consideration of whether a business loss caused by fire was a *natural and probable* result of Birach's allegedly erroneous advice. See *O'Neal*, 487 Mich at 496.

The proper focus here is whether plaintiffs' loss of investment, which occurred due to the fire that destroyed the restaurant and the subsequent denial of plaintiffs' insurance claim, was the result of *Birach's conduct* and other intervening causes that were foreseeable and within the

-4-

scope of original risk involved in legal malpractice. See *Weymers*, 454 Mich at 648; *Moning*, 400 Mich at 441. Birach played no role in causing the fire that destroyed the restaurant, and he had no involvement in the denial of plaintiffs' insurance claim. Rather, plaintiffs' loss of investment was the result of an independent intervening cause that Birach did not participate in, and which he could not reasonably foresee occurring under the circumstances. Cf. *Moning*, 400 Mich at 441 ("If the intervening cause is one which in ordinary human experience is reasonably to be anticipated, or one which the defendant has reason to anticipate under the particular circumstances, he may be negligent, among other reasons, because he has failed to guard against it; or he may be negligent only for that reason." [Quotation marks and citation omitted.]). Likewise, the destruction of the restaurant by fire was completely outside the scope of risks arising from legal malpractice. *Moning*, 400 Mich at 441. Therefore, the loss of an investment in a restaurant due to a fire was not a foreseeable, natural, and probable result of his alleged malpractice, see *O'Neal*, 487 Mich at 496, and it would be unreasonable to hold defendants responsible for the consequences of the intervening fire, see *Skinner*, 445 Mich at 163.

It is significant to note that plaintiffs' reasoning would hold defendants liable for any adverse outcome that may result from investing in a business, including financial failure and physical proper damage, because "opening a business always creates a risk that the owner may lose what he or she invested," regardless of the investors' purpose in investing or the investors' residency status. However, contrary to plaintiffs' claims, these adverse events are not the *probable* and *natural* results of investing in a business, based on an attorney's advice, *for the purpose of obtaining visas*. See *O'Neal*, 487 Mich at 496. Again, losing an investment in a business due to fire loss was not the *probable* and *natural* result of Birach's act of advising plaintiffs to invest in a business for visa-related purposes. See *id*. Stated differently, plaintiffs' status as illegal residents, and related investment in the restaurant for the sole purpose of obtaining visas, did not make it any more likely that their restaurant would burn or sustain any other type of loss than if they were legal residents, or if they had invested in the restaurant for another purpose. As defendants note on appeal, but for the fire, plaintiffs could have recouped their investment in a variety of ways, such that losing their investment was not the *natural and probable* result of Birach's allegedly negligent advice related to their ability to apply for E-2 visas.

Accordingly, the trial court did not err in concluding that the fire was an independent and intervening cause of plaintiffs' loss. Likewise, the trial court properly granted summary disposition in favor of defendants on this ground because reasonable minds could not differ in finding that Birach's allegedly negligent advice was not the proximate cause of plaintiffs' loss of investment. See *Nichols*, 253 Mich App at 532.

Plaintiffs' argument that Birach caused their financial loss by not informing them that their efforts to obtain E-2 visas were futile because the visas could not be granted to aliens illegally residing in the United States also fails. For the reasons stated *supra*, plaintiffs' damages do not arise from denial of visas, but from the fire.

B.  SHAMOON'S REMOVAL

Next, plaintiffs identify Birach's negligence as the proximate cause of Shamoon's removal from the United States, emphasizing that Shamoon was not removed for lying to border

officials, but because of his illegal residence. They identify as the cause of Shamoon's removal Birach's failure to "inform them that they could be immediately removed to Canada, and banned from returning for 5 years, if they were living in the United States," and the drafting of "a letter designed to make it easier for Shamoon to cross the border." Thus, the gravamen of plaintiffs' claim is a lack of knowledge regarding the consequences of their ongoing residence in the United States due to Birach's drafting of the letter and failure to inform them of the specific consequences of living in the United States and entering and exiting Canada.

However, Shamoon's own deposition testimony indicates that he never used the letter when applying for entry into the United States, including his December 29, 2010 attempt.[3] Further, Shamoon's statements in the "Record of Sworn Statement in Proceedings under Section 235(b)(1) of the [Immigration and Nationality] Act,"[4] taken on December 29, 2010, expressly acknowledge that (1) he did not have any legal status that would allow him to live and work in the United States; (2) he "[did not] have any legal papers" indicating a legal right to hold a permanent residence in the United States, "but [he] ha[d] a lawyer that was working on in [sic] it"; and (3) he did not tell the officer his true intent for entering the United States because "[i]f [he] t[old] them that[,] they would try and return [him] and ask for paper work [sic] and [he] didn't have paperwork." Moreover, in response to the question, "Did you willfully with hold [sic] the true intent of your trip to the primary officer in order for you to gain access to the United States?," Shamoon replied, "What can I tell you[,] officer[,] I have no other way. I don[']t mean to with hold [sic] anything[.] [T]his is the only way I can do it[.] I think there are about 50 million people living in America illegally. We have the paperwork . . . in the process and we want to stay in America . . . ." He also confirmed that he made a false statement, and

---

[3] In any event, the letter did not advise the plaintiffs to lie about their purpose for entering the United States.

[4] "For a document to constitute a 'valid affidavit,' it must be: '(1) a written or printed declaration or statement of facts, (2) made voluntarily, and (3) confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation.' Thus, . . . a document that is not notarized is not a 'valid affidavit.' " *Detroit Leasing Co v City of Detroit*, 269 Mich App 233, 236; 713 NW2d 269 (2005) (citation omitted). Although the sworn statement was not notarized by a notary public, it was sworn before a Customs and Border Protection officer. Pursuant to 8 USC 1225(d)(3),

> any immigration officer shall have power to administer oaths and to take and consider evidence of or from any person touching the privilege of any alien or person he believes or suspects to be an alien to enter, reenter, transit through, or reside in the United States or concerning any matter which is material and relevant to the enforcement of [the Immigration and Nationality Act] and the administration of the [Immigration and Naturalization Service of the Department of Justice].

Because both parties relied on the sworn statement in making their arguments in the trial court, and neither party contended that the sworn statement was inadmissible for purposes of MCR 2.116(G)(6), we will likewise consider the statement as admissible evidence for purposes of evaluating the trial court's grant of summary disposition pursuant to MCR 2.116(C)(10).

told his brother to make a false statement, to the primary line inspector "because I needed to tell them something to get into the country I make [sic] something up."

In light of this evidence, it is abundantly clear that Shamoon was fully aware that he did not have legal documentation that conferred on him a legal migration status to enter the United States. As a result, he initially lied to immigration officers regarding the purpose of his trip.[5] He did this deliberately because he "ha[d] no other way" to gain admission to the United States. Accordingly, plaintiffs' claim that Birach's alleged negligence, in failing to inform plaintiffs of their illegal status and the consequences of continuing to reside and work in the United States, was the cause in fact and the legal cause of Shamoon's removal from the United States is not supported by the record. See *Skinner*, 445 Mich at 162-163. Shamoon's own admissions to the immigration officers, and his misrepresentations, undermine any contention that he believed—based on Birach's advice and act of drafting a letter eight years previously—that he had legal authorization to enter the United States from Canada without any concern. Likewise, Shamoon's admissions and misrepresentations similarly undermine the conclusion that his removal from the county was caused by Birach's alleged failure to advise plaintiffs of the harsh consequences for illegally residing in the United States.[6] See *id*.

Shamoon's and Yousif's self-serving deposition testimony that they believed that they were legally living in the United States and that Shamoon was legally entering the country on December 29, 2010, does not establish causation nor create a *genuine* issue of material fact on this issue. No reasonable jury could believe that Shamoon was unaware of his illegal status in light of his undisputed act of misrepresentation when he attempted to enter the United States and his subsequent admissions to the immigration officer. His conduct revealed unequivocal knowledge of his illegal status and lack of proper documentation. See *Fuhr v Trinity Health Corp*, 495 Mich 869; 837 NW2d 275 (2013) (adopting the reasoning of the dissenting opinion in *Fuhr v Trinity Health Corp*, unpublished opinion per curiam of the Court of Appeals, issued April 16, 2013 (Docket No. 309877), which concluded that the "plaintiff failed to demonstrate a genuine issue of material fact because the only direct evidence of [his claim] was plaintiff's self-serving deposition testimony . . . . This evidence does not create a genuine issue of material fact because it is blatantly contradicted by the record so that no reasonable jury could believe it.").[7]

---

[5] It is significant that plaintiffs expressly acknowledge in their brief on appeal that Shamoon lied to Customs and Border Protection officers when he attempted to enter the United States.

[6] Notably, as plaintiffs recognize in their brief on appeal, Shamoon's act of lying to the federal officers was punishable by fine or imprisonment. See 8 USC 1325(a); 18 USC 1001(a). Furthermore, despite plaintiffs' repeated emphasis that, based on the documentation of the incident, Shamoon was not excluded because he initially misrepresented his reasons for entering the United States, we find it noteworthy that Shamoon's willful misrepresentation provided an equally viable basis for exclusion pursuant to 8 USC 1182(a)(6)(C)(i).

[7] See *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 369-370; 817 NW2d 504 (2012) (explaining that an order issued by the Michigan Supreme Court that adopts the dissenting opinion in the Court of Appeals constitutes binding precedent).

Cf. *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991) ("Parties may not create factual issues by merely asserting the contrary in an affidavit after giving damaging testimony in a deposition.").

Therefore, the trial court properly concluded that there was no genuine issue of material fact as to whether Shamoon's removal was proximately caused by Birach's advice. Rather, Shamoon's exclusion was the result of his own actions.

## V. CONCLUSION

We agree with the trial court that plaintiffs failed to establish the proximate cause element of their legal malpractice claim. Thus, the trial court properly granted summary disposition in favor of defendants on that basis.[8]

Affirmed.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Michael F. Gadola

---

[8] In light of our decision, it is unnecessary to consider defendants' alternative arguments concerning the wrongful conduct rule and whether plaintiffs' residency in the United States actually affected their eligibility for E-2 visas, given their Canadian citizenship.