HATHAWAY, J.
This case addresses the burden of proof necessary to establish proximate causation in a traditional medical malpractice action. At issue is whether the Court of Appeals properly reversed the trial court’s denial of summary disposition. The trial court ruled that plaintiff had established a question of fact on the issue of proximate causation sufficient to withstand a motion for summary disposition. The Court of Appeals reversed. It treated plaintiffs claim as a loss-of-opportunity claim instead of a traditional medical malpractice claim and held that plaintiff did not raise a genuine issue of fact, as required by Fulton v William Beaumont Hosp, 253 Mich App 70; 655 NW2d 569 (2002), because plaintiff could not prove that receiving the alleged appropriate treatment would have decreased his risk of stroke by greater than 50 percentage points. We disagree with the Court of Appeals’ analysis and conclusion.
We hold that the Court of Appeals erred by relying on Fulton and determining that this is a loss-of-opportunity case controlled by both the first and second sentences of MCL 600.2912a(2), and instead hold that this case presents a claim for traditional medical malpractice controlled only by the first sentence of *490 § 2912a(2). Further, we conclude that plaintiff established a question of fact on the issue of proximate causation because plaintiffs experts opined that defendants’ negligence more probably than not was the proximate cause of plaintiffs injuries. Finally, we hold that Fulton did not correctly set forth the burden of proof necessary to establish proximate causation for traditional medical malpractice cases as set forth in § 2912a(2). Therefore, we overrule Fulton to the extent that it has led courts to improperly designate what should be traditional medical malpractice claims as loss-of-opportunity claims and has improperly transformed the burden of proof in a traditional malpractice case from a proximate cause to the proximate cause.
Accordingly, we reverse the judgment of the Court of Appeals and remand this matter to the Court of Appeals for consideration of the issue not decided on appeal in that court.
I. FACTS AND PROCEEDINGS
This case involves allegations of negligence in medical care. Plaintiff had an illness known as sickle cell anemia. Plaintiff developed acute chest syndrome (ACS), which is a known complication of sickle cell anemia. Plaintiff claims that his ACS was misdiagnosed as pneumonia and as a consequence he did not receive the correct treatment. Plaintiffs experts opined that ACS requires treatment with an aggressive blood transfusion or an exchange transfusion, either of which needs to be given on a timely basis. While plaintiff ultimately received a transfusion, his experts opined that it was given too late and, as a consequence, plaintiff suffered a disabling stroke. Plaintiff alleged that defendants’ failure to provide a timely transfusion violated the standard of care and that defendants’ *491 negligence was a proximate cause of his disabling stroke. Plaintiffs complaint pled a traditional malpractice claim and did not plead a claim for lost opportunity.
In support of his position, plaintiff offered two expert hematologists who testified that defendants’ violations of the standard of care more probably than not caused plaintiffs injuries. Plaintiffs third hematology expert explained his opinion in statistical terms and testified that a patient with ACS has a 10 to 20 percent chance of developing a stroke. He further testified that with a timely exchange transfusion, the risk of stroke is reduced to less than 5 to 10 percent.
Defendants brought a motion for summary disposition challenging the sufficiency of plaintiffs expert testimony on the issue of proximate causation. Even though plaintiffs complaint pled only traditional malpractice, defendants’ motion made no distinction between the proof required for proximate causation in a traditional malpractice claim and the burden required for a claim based on loss of opportunity. Instead, defendants argued that plaintiffs case was controlled by both the first and second sentences of MCL 600.2912a(2), which require that the plaintiff prove “that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants” and that “the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%. ”
Defendants argued that a reduction in the risk of stroke from 10 to 20 percent to less than 5 to 10 percent amounted to at best a 20 percentage point differential,[1] *492 which would be insufficient to meet the burden of proof on proximate causation. Defendants relied on Fulton to support their position that plaintiff must comply with this percentage point differential theory. Plaintiff countered that defendants’ statistical portrayal of these numbers was mathematically inaccurate because his experts’ testimony supported a finding that his injuries were more probably than not proximately caused by defendants’ negligence. The trial court agreed with plaintiff. The trial court denied defendants’ motion, ruling that plaintiff had presented sufficient testimony to establish a question of fact on proximate causation.
The Court of Appeals based its decision entirely on Fulton and reversed the trial court in an unpublished opinion per curiam, holding that this case presented a claim for a loss of opportunity and that plaintiff had not met his burden of proof under MCL 600.2912a(2). [2] The Court of Appeals reasoned that plaintiff was bound by the Fulton analysis and that a percentage point differential applied to this case.[3] The Court opined:
In asserting that defendants’ negligence resulted in a stroke, plaintiff essentially argues that had defendants ordered a transfusion sooner, plaintiff would have avoided a stroke. Thus, to say defendants’ failure to apply proper treatment caused the stroke is to say that this failure deprived plaintiff a greater opportunity to avoid the stroke. Consequently, plaintiffs claim amounts to one of lost opportunity to achieve a better result, and § 2912a(2) is applicable.
In Fulton, this Court set forth the formula by which to calculate whether the opportunity to achieve a better result *493 was greater than 50 percent — specifically, the Court must “subtract!] the plaintiffs opportunity to survive after the defendant’s alleged malpractice from the initial opportunity to survive without the malpractice.” Ensink [v Mecosta Co Gen Hosp, 262 Mich App 518, 531; 687 NW2d 143 (2004)].[4]
We granted leave to review this matter, asking the parties to brief:
(1) whether the requirements set forth in the second sentence of MCL 600.2912a(2) apply in this case; (2) if not, whether the plaintiff presented sufficient evidence to create a genuine issue of fact with regard to whether the defendants’ conduct proximately caused his injury or (3) if so, whether Fulton v William Beaumont Hosp, 253 Mich App 70 (2002), was correctly decided, or whether a different approach is required to correctly implement the second sentence of § 2912a(2).[5]
II. STANDARD OF REVIEW
This case involves review of a trial court’s decision on a motion for summary disposition, which this Court reviews de novo.[6] The issue also involves questions of statutory interpretation. Statutory interpretation is a question of law, which this Court also reviews de novo.[7]
III. ANALYSIS
At issue is whether the Court of Appeals properly reversed the trial court’s denial of summary disposition on the issue of proximate causation. In order to answer this question we must review MCL 600.2912a.
*494 MCL 600.2912a provides:
(1) Subject to subsection (2), in an action alleging malpractice, the plaintiff has the burden of proving that in light of the state of the art existing at the time of the alleged malpractice:
(a) The defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.
(b) The defendant, if a specialist, failed to provide the recognized standard of practice or care within that specialty as reasonably applied in light of the facilities available in the community or other facilities reasonably available under the circumstances, and as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury
(2) In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%.
This statute, which governs the burden of proof in medical malpractice cases, was originally added to the Revised Judicature Act in 1977. It has been amended on several occasions, with the most recent amendment in 1993 adding subsection (2), which is at issue in this case. Subsection (2) contains two sentences. It is undisputed that the first sentence, which repeats the burden of proof as articulated in subsections (l)(a) and (b), merely reiterates the longstanding rule requiring a plaintiff to prove “that he or she suffered an injury that *495 more probably than not was proximately caused by the negligence of the defendant or defendants.” MCL 600.2912a(2).
The second sentence of § 2912a(2) addresses a subcategory of injuries in medical malpractice litigation governed by the loss-of-opportunity doctrine. The Legislature did not define the phrase “loss of an opportunity to survive or an opportunity to achieve a better result.” However, while not defined in the statute, the doctrine was initially recognized and defined in Michigan in Falcon v Mem Hosp, 436 Mich 443; 462 NW2d 44 (1990).[8]
It is generally accepted that the 1993 amendment to § 2912a was adopted in a direct reaction to Falcon, meaning that it repudiated Falcon’s reduced proximate causation theory.[9] Thus, it is generally accepted that in adopting this amendment, the Legislature intended to limit medical malpractice claims to the pre-Falcon state of the law: if it was more probable than not that the plaintiff would have died even with the best of treatment, a claim for medical malpractice is precluded.[10]
We next turn to the correct interpretation of both sentences of § 2912a(2) and their applicability to the *496 case before us. In examining the first line of § 2912a(2), we are guided by the principle that nothing in § 2912a(2) has changed the burden of proof for traditional medical malpractice claims. The language of the first line of subsection (2) is clear: “in an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants. ” This language reiterates the language of the previous subsections and merely restates the well-accepted, well-established historical rule for proximate causation.[11] As the meaning of this sentence is well-established, no further statutory construction is necessary.
The proper interpretation of proximate causation in a negligence action is well-settled in Michigan. In order to be a proximate cause, the negligent conduct must have been a cause of the plaintiffs injury and the plaintiffs injury must have been a natural and probable result of the negligent conduct. These two prongs are respectively described as “cause-in-fact” and “legal causation.” See Skinner v Square D Co, 445 Mich 153, 162-163; 516 NW2d 475 (1994); Sutter v Biggs, 377 Mich 80; 139 NW2d 684 (1966); Glinski v Szylling, 358 Mich 182; 99 NW2d 637 (1959). While legal causation relates to the foreseeability of the consequences of the defendant’s conduct, the cause-in-fact prong “generally requires showing that ‘but for’ the defendant’s actions, the plaintiffs injury would not have occurred.” Skinner, 455 Mich at 163. It is equally well-settled that proximate causation in a malpractice claim is treated no differently than in an ordinary negligence claim, and it is well-established that there can be more than one *497 proximate cause contributing to an injury. Brisboy v Fibreboard Corp, 429 Mich 540; 418 NW2d 650 (1988); Barringer v Arnold, 358 Mich 594; 101 NW2d 365 (1960); Gleason v Hanafin, 308 Mich 31; 13 NW2d 196 (1944). Finally, it is well-established that the proper standard for proximate causation in a negligence action is that the negligence must be “a proximate cause” not “the proximate cause.” Kirby v Larson, 400 Mich 585; 256 NW2d 400 (1977). Thus, the burden of proof for proximate causation in traditional medical malpractice cases is analyzed according to its historical common-law definitions and the analysis is the same as in any other ordinary negligence claim. Nothing in this opinion changes or alters these well-settled principles.[12]
We next consider whether the Court of Appeals erred by relying on Fulton and applying the second sentence of § 2912a(2) to the present case. The second sentence of § 2912a(2) provides: “In an action alleging medical malpractice, the plaintiff cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the opportunity was greater than 50%. ” Since the statute was amended in 1993, litigants and the courts have debated the meaning of this second sentence.[13] While the debate over the meaning of the *498 second sentence demonstrates that significant questions surround loss-of-opportunity cases, it is clear from the plain language of the statute that the second sentence is intended to apply to loss-of-opportunity cases. Today we address whether the second sentence of § 2912a(2) also applies to traditional malpractice cases and we unequivocally hold that it does not. Because the Court of Appeals in this case relied on Fulton, which erroneously applied the second sentence to a traditional malpractice case, we review Fulton and determine what, if any, continuing validity it has.
Fulton involved a claim for the failure to timely diagnose cervical cancer. The plaintiff, the personal representative of the decedent’s estate, alleged that if decedent’s cancer had been diagnosed during her pregnancy, she would have had treatment options available that could have saved her life. The theory was that the decedent was not diagnosed until her cancer was untreatable and, as a consequence, she died. The plaintiffs expert’s testimony on proximate causation was described by the Court of Appeals as follows:
Defendants moved for summary disposition under MCR 2.116(0(10), arguing that plaintiff could not show that their negligence was the cause of Fulton’s death. In response, plaintiff submitted an affidavit from Dr. Taylor, opining that if Fulton’s cancer had been diagnosed while she was pregnant and if she had been treated after her child was delivered, she would have had an eighty-five percent chance to survive. Dr. Taylor opined that when Fulton was actually diagnosed with cancer, her opportunity to survive had decreased to sixty to sixty-five percent. *499 Therefore, according to Dr. Taylor, Fulton’s opportunity to survive the cancer decreased by twenty to twenty-five percent because of defendants’ malpractice. In reply, defendants argued that Dr. Taylor’s affidavit was improper because it contradicted his deposition testimony and that, in any event, this affidavit was not enough to create a question of fact under MCL 600.2912a(2).[14]
Fulton opined that because the decedent went from an 85 percent pre-malpractice chance of survival to a 60-65 percent post-malpractice chance of survival, she “suffered a loss of a twenty to twenty-five percent chance of survival.”[15] Fulton determined that a percentage point differential subtraction analysis was required by the statute. As demonstrated by the Fulton analysis, the conclusion is reached by a simplistic subtraction formula. Fulton subtracted the statistical likelihood of a better outcome without treatment from the statistical likelihood of a better outcome with treatment to determine if the resulting number is greater than 50.
Fulton’s simplistic subtraction formula is not an accurate way to determine whether a defendant’s malpractice is a proximate cause of the injury. Fulton’s analysis was erroneous because it misconstrued proximate causation as it applies to a traditional malpractice case. Under the Fulton subtraction formula it is mathematically impossible for there to be more than one proximate cause. Thus, in creating and applying this simplistic formula, Fulton fundamentally altered a plaintiffs burden of proof. Fulton transformed the burden of proof in traditional malpractice cases from a proximate cause to the proximate cause because it allows for only one proximate cause in any case. This proposition is in error because it has no basis in statute *500 or common law and it is inconsistent with the clear and unambiguous language of the first sentence of § 2912a(2). Moreover, as the Court of Appeals’ decision in this case illustrates, Fulton’s analysis is being applied to all malpractice cases, even when they are pled only as traditional malpractice cases.
The Court of Appeals, analysis in the present case perpetuates the Fulton doctrine and the confusion surrounding proximate causation in medical malpractice claims. Much of the confusion stems from the inherent nature of medical malpractice: the plaintiff is generally seeking treatment for a preexisting medical condition that is causing a problem of some sort on its own, whereas in an ordinary negligence claim the plaintiff is generally an otherwise uninjured person who is claiming that the entire injury was caused by the incident.
In the present case, plaintiff was prepared to offer three expert witnesses to testify on his behalf on the issue of proximate causation at the time of trial. Two of plaintiffs experts unequivocally opined, in a discovery deposition, that had the necessary treatment been given, it was more probable than not that plaintiff would not have had a stroke.
Plaintiffs first expert, Dr. Richard Stein, opined:
Q. I just have one question. Doctor, based on the extrapolation of the peds data that you’ve described for us, within a reasonable degree of medical certainty, and by that I mean with a greater than 50 percent likelihood, if Dr. Tapazoglou had met the standard of care as you defined it today, would the stroke have been avoided?
A. To a reasonable degree of medical certainty, my opinion is yes, and I have already stated the basis for that opinion.
*501 After opining that an exchange transfusion was necessary to reduce plaintiffs hemoglobin S concentration to less than 30 percent, Dr. John Luce, plaintiffs second expert, opined:
Q. With respect to Mr. O’Neal, if the hemoglobin S had been reduced to less than 30 percent, do you have an opinion as to whether or not he would have had the stroke anyhow?
A. I think it is probable that he would not have.
Q. When you say “probable,” are you prepared to say more probably than not had Mr. O’Neal had his hemoglobin S reduced to less than 30 percent he would not have had a stroke?
A. Correct.
The testimony of the third expert, Dr. Griffin Rodgers, was more specific in expressing the statistics. The trial court summarized his testimony:
Dr. Griffin Rodgers, a hematologist, testified that a patient in sickle cell crisis of acute chest syndrome has in the order of 10 or 20 percent chance of developing a stroke. With a timely exchange transfusion, it reduces the risk of stroke to less than 5 or 10 percent. Dr. Griffin’s testimony demonstrates that Plaintiff had more than a 50 percent chance to avoid a stroke.
As this case demonstrates, the way causation is analyzed is important, especially when reviewing statistical data. In this instance, do these facts represent at best a 20 percent chance to avoid an injury, as the Court of Appeals concluded, or do they establish proximate causation, as found by the trial court? To answer this question we must determine whether we use a percentage point differential subtraction analysis (as used by the Court of Appeals in applying the Fulton formula) or whether we follow the approach taken by the trial court. In doing so we must follow the analysis that is *502 most consistent with our historical rules governing proximate causation and the plain language of § 2912a(2), which requires that a plaintiff prove that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants, in the context of this case. While the use of mathematical statistics is not required by the statute, and we do not impose such a requirement, we conclude that the analysis used by plaintiffs experts and the trial court represents the correct approach in this instance because it accurately represents the historical view of proximate causation as expressed in the first sentence of § 2912a(2) based on its application to these facts.
In this case, it is undisputed that with or without treatment plaintiff was more probably than not going to avoid the stroke. In other words, even without treatment it was more probable that plaintiff would not have a stroke. However, plaintiff did have a stroke. If the Fulton 50 percentage point differential subtraction analysis is used, plaintiff cannot proceed with a traditional claim because the failure to provide treatment was not the cause of the injury expressed in percentage point differential terms. As previously indicated, however, the problem is that a 50 percentage point differential subtraction analysis necessarily means that there can only be one cause of an injury. This analysis is not consistent with the historical test for proximate causation, which has always been that the malpractice be a proximate cause rather than the proximate cause.
Applying a 50 percentage point differential subtraction analysis requires that we change the traditional analysis of causation in medical malpractice cases to the one most immediate, efficient, and direct cause of the injury. This, however, is the standard for determining *503 the proximate cause rather than a proximate cause. This approach is simply not in keeping with our historical view of causation.[16]
The Fulton approach is incorrect because it requires a reliance on probabilities and possibilities of things that have not yet occurred, rather than reliance on what has actually occurred. Plaintiff in this case did have a stroke and was injured; his claim is for an existing injury, not just the possibility of one. Plaintiffs injury is no longer a statistical probability, it is a reality. The focus, once he was injured, is on the connection between defendants’ conduct and the injury. The relevant inquiry for proximate causation is whether the negligent conduct was a cause of plaintiffs injury and whether plaintiffs injury was a natural and probable result of the negligent conduct. If so, defendants’ conduct was a proximate cause, even though there may have been other causes. The analysis for proximate causation is the same whether we are discussing medical malpractice or ordinary negligence. Defendants’ conduct in this case meets this standard when the defendants’ actual conduct, rather than plaintiffs statistical probability of achieving a better outcome, is the focus of the inquiry.
In this instance, plaintiff suffered an injury that was more probably than not proximately caused by the negligence of defendants. As the trial court properly found, defendants’ negligent conduct increased plain *504 tiffs risk of stroke from less than 5 to 10 percent to 10 to 20 percent. When viewed in the light most favorable to plaintiff, the change is from less than 5 percent to 20 percent. As the trial court analyzed, this represents a change that is greater than 50 percent in this instance. The trial court’s approach is in keeping with the historical analysis of proximate causation because it involves a comparative analysis, not a simplistic subtraction formula. Determining what is “more probable than not” is inherently a comparative analysis. The proper method of determining whether the defendant’s conduct more probably than not proximately caused the injury involves a comparative analysis, which is dependent upon the facts and circumstances and expert opinion in a given case.[17]
We conclude that Fulton’s simple subtraction analysis is wrong and unsupportable. While § 2912a(2) does not mandate the use of statistics or require any particular mathematical formula, the historical analysis of proximate cause must be followed to wit: the analysis or formulation used cannot require that the cause must be the proximate cause rather than a proximate cause.
No single formula can be dispositive for all cases. In this case if we were to use a standard percentage decrease calculation (meaning that defendants were responsible for 15 percentage points out of the 20 total percentage points of plaintiffs risk of the bad result, so that there is a 15/2o chance or 75 percent chance) defendants’ malpractice was a proximate cause of the injury.[18] Similarly, if the evidence is viewed as a stan *505 dard percentage increase calculation (meaning that defendants were responsible for 15 percentage points of increase over the 5 percentage points to begin with, thus causing a 300% [15/s] increase in plaintiffs risk of harm) defendants’ malpractice was a proximate cause of the injury.[19]
It is also important to emphasize that not all traditional medical malpractice cases can or will be expressed in statistical or percentage terms, nor is a plaintiff required to express proximate causation in percentage terms. The plain language of the statute requires that proximate causation in traditional malpractice cases be expressed by showing that the defendant’s conduct was more probably than not a cause of the injury, not by statistical or percentage terms.[20]
Given that Fulton used an incorrect mathematical formula and is being used to transform the burden of proof in traditional malpractice cases, we must next decide if it has any continuing validity. We find that it has none in the context of traditional medical malpractice cases. In Stone, all seven justices of this Court recognized that *506 Fulton’s analysis was incorrect or should be found to no longer be good law, though their reasons for doing so varied.[21] While I was not a member of this Court when Stone was decided, I also conclude that Fulton did not correctly set forth the burden of proof necessary to establish proximate causation as set forth in § 2912a(2). As all justices of this Court have concluded that Fulton’s analysis of § 2912a(2) is wrong, it is illogical to fail to overrule Fulton, because by failing to do so, this Court fosters unnecessary confusion for litigants and the lower courts. Accordingly, we overrule Fulton to the extent that it has led courts to improperly designate what should be traditional medical malpractice claims as loss-of-opportunity claims and has improperly transformed the burden of proof in a traditional malpractice case from a proximate cause to the proximate cause.
We emphasize that we hold that the second sentence of § 2912a(2) applies only to medical malpractice cases that plead loss of opportunity and not to those that plead traditional medical malpractice; we do not address the scope, extent, or nature of loss-of-opportunity claims as that issue is not before us. Significant questions surround such claims.[22] However, we decline to decide issues that are not necessary to the resolution of the case before us.
IV CONCLUSION
For all the foregoing reasons, we conclude that the Court of Appeals erred in the present case by reversing *507 the trial court’s denial of summary disposition. The case before us presents a traditional malpractice claim. It does not present a claim for loss of opportunity. In traditional malpractice cases, the plaintiff is required to prove that the defendant’s negligence more probably than not caused the plaintiffs injury. In this case, the testimony of plaintiffs expert witnesses supports plaintiffs position on proximate causation. While that testimony is not dispositive, it is sufficient to raise a question of fact to defeat a motion for summary disposition, allowing the issue to be adjudicated on the merits by the trier of fact. Finally, we overrule Fulton to the extent that it has led courts to improperly designate what should be traditional medical malpractice claims as loss-of-opportunity claims and has improperly transformed the burden of proof in a traditional malpractice case from a proximate cause to the proximate cause.
Accordingly, we reverse the judgment of the Court of Appeals and remand this matter to the Court of Appeals for consideration of the issue not decided on appeal in that court.
WEAVER, J., concurred with HATHAWAY, J.

 The Court of Appeals reasoned: “This number is the difference between the highest chance plaintiff had of developing a stroke without proper treatment (i.e., 20 percent) and the lowest chance of developing a *492 stroke with proper treatment (i.e., less than five percent, or in the light most favorable to plaintiff, zero percent).” O’Neal v St John Hosp & Med Ctr, unpublished opinion per curiam of the Court of Appeals, issued November 4, 2008 (Docket Nos. 277317 and 277318), p 5 n 7.

 Id. at 4.

 Id. at 4-5.

4 Id. at 4.

5 O’Neal v St John Hosp & Med Ctr, 485 Mich 901 (2009).

 Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000).

 In re Investigation of March 1999 Riots in East Lansing, 463 Mich 378, 383; 617 NW2d 310 (2000).

 Falcon held that in a wrongful death case a plaintiff could bring a claim for a decedent’s loss of opportunity to survive even if he or she did not meet the traditional proximate causation standard. Falcon reasoned that when the decedent suffered a substantial reduction in the loss of opportunity to survive — in that case 37.5 percent — even though the plaintiff could not maintain a traditional malpractice claim for the death itself because the plaintiff could not establish causation, she could bring a claim for loss of opportunity to survive. Falcon also stated that the doctrine applied to wrongful death claims and left the question of whether the doctrine applied to lesser injuries to another day. Falcon 436 Mich at 460-462, 469-470 (opinion by Levin, J.).

 Stone v Williamson, 482 Mich 144, 169; 753 NW2d 106 (2008).

 Nothing in our opinion today alters or changes that premise.

 Kirby v Larson, 400 Mich 585, 600-607; 256 NW2d 400 (1977) (opinion by Williams, J.).

 This is true despite the contrary statements in Justice Young’s dissent. The comments of the dissent amount to nothing more than another intemperate outburst of inappropriate accusations and illogical assertions. While the dissent decries confusion, the only apparent confusion in this matter lies in the dissent itself, which lacks sound analytical reasoning and even a basic understanding of the law of proximate causation. The dissent, if followed to its logical conclusion, would allow recourse for the negligent actions of medical providers only in those instances in which one provider’s conduct is at issue and only when no pre-existing medical condition exists. Such an interpretation is not supported by any case law or the statute itself.

 The opinions in Stone illustrate this point. The debate has centered on such questions as whether the Legislature intended this sentence to *498 restore the law to its pre-Falcon state, meaning that loss-of-opportunity claims are not recognized at all, or whether the Legislature’s choice of language reflected intent to recognize such claims hut limit their availability. Questions have also arisen about whether the last sentence of § 2912a(2) applies to all medical malpractice cases, including traditional ones, or only those that are presented as loss-of-opportunity claims.

14 Fulton, 253 Mich App at 74-75.

 Id. at 82.

 Common-law rules apply to medical malpractice actions unless specifically abrogated by statute. See MCL 600.2912(1) which provides:
A civil action for malpractice may be maintained against any person professing or holding himself out to be a member of a state licensed profession. The rules of the common law applicable to actions against members of a state licensed profession, for malpractice, are applicable against any person who holds himself out to be a member of a state licensed profession. [Emphasis added.]

 Comparative analyses could include standard percentage increases, standard percentage decreases, or other scientifically accepted statistical analyses offered by the experts.

 Moreover, either of the mathematical formulas used as an example (standard statistical decrease or increase) may not be appropriate in all *505 cases because either could limit causation to one proximate cause in those cases involving the conduct of more than one defendant.

 I recognize that Justice Cavanagh and I differ on whether an increased risk of harm is a valid statistical method for determining proximate causation in a traditional malpractice case. However, both Justice Cavanagh and I agree that claims evaluated in that manner may be brought; we only disagree about whether those claims proceed as claims for traditional malpractice or claims for loss of opportunity.

 We also recognize that different mathematical formulations can have varying results and that the results must be viewed in the light most favorable to the nonmoving party. For example, while percentage increases and percentage decreases would both be valid methods to determine proximate causation, they can yield different results. In those instances, if either calculation demonstrates that the plaintiff suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants, the plaintiff’s case may proceed.

 Stone, 482 Mich at 164 (opinion by Taylor, C.J.).

 Questions exist about the full scope and extent of loss-of-opportunity claims and the extent of damages recoverable in those actions, which we do not decide today. For example, a partial discussion of the scope of loss-of-opportunity claims was at issue in Wickens v Oakwood Healthcare Sys, 465 Mich 53; 631 NW2d 686 (2001). While Justice Cavanagh and I do not fully agree in this case, I do agree with Justice Cavanagh’s partial dissent in Wickens that a living person may pursue a claim for loss of opportunity under the circumstances presented in that case.