# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF BETTY SIMMS-NORMAN, by its
Personal Representative, MARCIA BUTTS,

        Plaintiff-Appellee,

v

ST. JOHN MACOMB-OAKLAND HOSPITAL,
ST. JOHN PROVIDENCE HEALTH SYSTEM,
SETH B. PARKER, M.D., and GREAT LAKES
MEDICINE, PLC,

        Defendants-Appellants.

UNPUBLISHED
June 19, 2018

No. 334892
Macomb Circuit Court
LC No. 2015-000135-NH

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

In this medical malpractice action, defendants appeal by leave granted an order denying their motion for summary disposition under MCR 2.116(C)(10). We affirm.

Plaintiff filed a complaint alleging that defendant, Dr. Seth Parker, was liable for "ordinary negligence, professional negligence and/or medical malpractice" because he included a prescription for Protonix, a proton pump inhibitor (PPI) medication, in the discharge instructions for Betty Simms-Norman, an 81-year-old woman, when she was discharged from St. John Macomb-Oakland Hospital to a nursing home after being treated at the hospital for renal failure.[1] Upon Simms-Norman's placement at the nursing home, the nursing home doctor did not give Simms-Norman Protonix but "exchanged" Prilosec, another PPI medication, for Protonix. After several days at the nursing home, Simms-Norman was readmitted to the hospital with acute renal failure, which required approximately two months of dialysis. Plaintiff alleged that the PPI medication caused Simms-Norman's renal failure. Plaintiff further alleged that Dr. Parker was negligent in failing to prescribe a non-PPI medication, such as Pepcid, and in failing to inform the nursing home that Simms-Norman should not take a PPI, where the nephrologist saw Simms-Norman at the hospital and had recommended that Simms-Norman be given Pepcid rather than a

---

[1] The complaint alleged that Great Lakes Medicine, PLC, which employed Dr. Parker and St. John Macomb-Oakland Hospital, were vicariously liable for Dr. Parker's negligence.

PPI, due to a possibility that PPI medications were causing her renal failure. Plaintiff does not allege that Dr. Parker's conduct caused Simms-Norman's eventual death in March 2015 but alleges that the dialysis caused pain, suffering, an overall deterioration of her condition, and other damages.

Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that plaintiff was unable to demonstrate that Dr. Parker's conduct was a proximate cause of Simms-Norman's injuries. The trial court denied defendants' motion after concluding that genuine issues of fact existed with respect to whether Dr. Parker's conduct was a proximate cause of the alleged injuries. Defendants now argue that the trial court erred in denying their motion for summary disposition. We disagree.

This Court reviews a trial court's grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id.* at 120. When considering the motion, the court considers the affidavits, pleadings, depositions, admissions, and other evidence in the light most favorable to the nonmoving party. *Id.* If the proffered evidence fails to establish a genuine issue of material fact for trial, then the moving party is entitled to judgment as a matter of law. MCR 2.116(G)(4); *Maiden*, 461 Mich at 120.

In order to be a proximate cause in a negligence action, "the negligent conduct must have been a cause of the plaintiff's injury and the plaintiff's injury must have been a natural and probable result of the negligent conduct. These two prongs are respectively described as 'cause-in-fact' and 'legal causation.' " *O'Neal v St John Hosp and Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). To establish that a defendant's conduct was a cause-in-fact of the plaintiff's injury, the plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Weymers v Khera*, 454 Mich 639, 647-648; 563 NW2d 647 (1997). Legal causation relates to the foreseeability of the consequences of the defendant's conduct. *O'Neal*, 487 Mich at 496. There can be more than one proximate cause contributing to an injury. *Id.* at 496-497.

Defendants first argue that plaintiff cannot establish proximate cause where the evidence showed that the nursing home physician exercised her independent authority to exchange the Protonix prescribed by Dr. Parker for Prilosec. There was undisputed evidence from plaintiff's expert, Dr. Winston, however, that Prilosec and Protonix are both PPI drugs and that it was the effect of the PPI class of drugs that was relevant to plaintiff's kidney condition. Essentially, the distinction between Prilosec and Protonix was irrelevant because both medications were PPI medications. Dr. Winston testified that Prilosec is far more often prescribed than Protonix so that the greater number of cases that they have detailing AIN as a result of PPI's comes from Prilosec. Dr. Winston further testified that the decedent more likely than not developed AIN and that it was a cofactor in her recurrent kidney injury. He testified that the PPI was a cofactor in causing the decedent's acute kidney problems and that either Prilosec or Protonix would have caused the AIN because it was a class effect, not drug specific. Thus, where the evidence showed that Dr. Parker prescribed a PPI and that the nursing home doctor gave Simms-Norman a PPI, the fact that the nursing home doctor gave a different PPI does not defeat plaintiff's claim of proximate cause.

Defendants next argue that Dr. Parker's prescription of Protonix was not a proximate cause of Simms-Norman's injuries because there was expert testimony from Dr. Winston that the nursing home doctor, rather than Dr. Parker, was responsible for Simms-Norman's care upon her return to the nursing home. While Dr. Winston testified that the nursing home doctor was responsible for continuing Dr. Parker's orders, he also testified that it was "usual and customary" for a nursing home doctor to rely on the discharge medications of the discharging doctor and that there was no way for the nursing home doctor to have known that PPIs were an issue. In fact, it appears that the nursing home doctor did not receive the decedent's medical records upon her discharge from the hospital; rather she only received the discharge orders, which contained the prescription for Protonix. It is unclear why the nursing home doctor, the decedent's primary care physician, would be expected to ignore a medication that was ordered by the doctor and hospital that had just treated the decedent for a serious illness. When read in context, we are not convinced that Dr. Winston's testimony that the nursing home doctor was responsible for continuing Dr. Parker's orders defeats plaintiff's claim that Dr. Parker's conduct contributed to the alleged injuries.

Defendants next argue that plaintiff cannot establish causation where her expert's opinion was based on assumptions that were not in accord with the objective facts. We disagree. "[A]n expert's opinion is objectionable where it is based on assumptions that are not in accord with the established facts." *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 286; 602 NW2d 854 (1999). Defendants argue that plaintiff should not be permitted to rely on Dr. Winston's testimony to establish causation because Dr. Winston's opinions ignored six relevant facts. Our review of the record shows, however, that Dr. Winston's opinion considered the six facts to which defendants refer. We specifically note that nephrologist, Dr. Brar, who consulted with the decedent while she was in the hospital on several occasions, testified that she ultimately believed that ATN rather than AIN was the cause of the decedent's renal failure but that a biopsy, which was not done, is the only way to get a definitive diagnosis. She repeated that a definitive diagnosis can only be obtained through a biopsy several times throughout her testimony. When specifically asked if she ruled out AIN for the decedent, Dr. Brar testified, "The only definitive thing to do is a biopsy." We thus find no merit in defendants' argument.

Defendants next argue that plaintiff's causation theory is not supported by Michigan law regarding legal causation. Defendants rely on *Singerman v Muni Serv Bureau*, 455 Mich 135; 565 NW2d 383 (1997), to support their argument that plaintiff cannot establish legal causation. In *Singerman*, the plaintiff hockey coach was hit in the eye with a puck while on the ice hockey rink at a sports arena. *Id.* at 136-137. The plaintiff alleged, in part, that his injury resulted from the defendants' failure to enforce rink safety rules requiring participating coaches to wear helmets while on the ice. *Id.* at 144. The plaintiff did not argue that a helmet would have prevented his eye injury but argued that, had the rink enforced the rule requiring coaches to wear helmets while on the ice, he would not have entered the ice and would not have been injured. *Id.* After noting that "the allegedly negligent failure to enforce the helmet rule would create liability in defendants only for injuries that would have been prevented by use of the helmet," the Court explained:

> An event may be one without which a particular injury would not have occurred, but if it merely provided the condition or occasion affording opportunity for the other event to produce the injury, it is not the proximate cause thereof.

Negligence which merely makes possible the infliction of injuries by another, but does not put in motion the agency by which the injuries are inflicted, is not the proximate cause thereof. Causes of injury which are mere incidents of the operating cause, while in a sense factors, are so insignificant that the law cannot fasten responsibility upon one who may have set them in motion. [*Id.* at 145, citing 57A Am Jur 2d, Negligence, § 473, pp 454–455.]

The court concluded that, because a helmet would not have prevented the plaintiff's injury, the plaintiff had failed to demonstrate proximate cause. *Id.* at 145.

Relying on *Singerman*, defendants argue that, given the nursing home doctor's responsibility to exercise independent judgment with respect to her care of Simms-Norman, Dr. Parker's prescription of a PPI was too remote for the law to allow recovery. *Singerman*, however, is distinguishable from the instant case. While enforcement of the ice rink's helmet rule would not have prevented the plaintiff's injury in *Singerman*, there exists a question of fact with respect to whether Dr. Parker's prescription of a PPI caused the nursing home doctor to give Simms-Norman a PPI, which plaintiff alleges resulted in her injuries. Accordingly, *Singerman* does not support defendants' argument that Dr. Parker's conduct was not a proximate cause of Simms-Norman's injuries.

Finally, defendants argue that plaintiff's theory of causation is impermissibly based on speculation and conjecture. We disagree. "Cause in fact may be established by circumstantial evidence, but such proof 'must facilitate reasonable inferences of causation, not mere speculation.' " *Genna v Jackson*, 286 Mich App 413, 417-418; 781 NW2d 124 (2009), quoting *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994). While plaintiff did not present direct factual evidence that the nursing home doctor relied on Dr. Parker's discharge prescription, the evidence that Dr. Parker prescribed a PPI in the discharge instructions, that the nursing home doctor would not have had sufficient evidence to determine independently that Simms-Norman should not be given a PPI, that it was "usual and customary" for a nursing home doctor to rely on the discharge medications, and that Simms-Norman was given a PPI at the nursing home is circumstantial evidence sufficient to demonstrate a genuine issue of material fact with respect to whether, but for Dr. Parker's conduct, Simms-Norman would not have been given a PPI at the nursing home.

Therefore, we affirm the trial court's order denying defendants' motion for summary disposition under MCR 2.116(C)(10).

Affirmed.

/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

-4-