*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

KEVIN ONG,

       Plaintiff-Appellee,

v

CHERYL LEWIS and SUBURBAN MOBILITY
AUTHORITY FOR REGIONAL
TRANSPORTATION,

       Defendants-Appellants.

UNPUBLISHED
June 8, 2023

No. 361061
Macomb Circuit Court
LC No. 2020-002043-NI

---

Before: PATEL, P.J., and CAVANAGH and REDFORD, JJ.

PATEL, P.J. (*concurring in part and dissenting in part*).

I respectfully concur in part and dissent in part. I agree with the majority that Lewis's conduct did not rise to the level of gross negligence and thus I concur in the result that she is entitled to governmental immunity under MCL 691.1407(2). But I respectfully dissent and would affirm the trial court's denial of summary disposition to SMART because, considering the evidence in the light most favorable to Ong, I believe that there are genuine issues of material fact whether Lewis negligently operated SMART's bus, whether Lewis's negligent operation of the bus was a proximate cause of Ong's injuries, and whether Ong was more than 50% at fault for the crash.[1]

The motor-vehicle exception to governmental immunity holds a governmental agency liable for bodily injury or property damage "resulting from the negligent operation" of a government-owned vehicle. MCL 691.1405. I respectfully disagree with the majority that Lewis did not have a duty under the circumstances and thus cannot be held liable for negligence. As recognized by the majority, "the parties do not dispute that Lewis had the duty to drive in a

---

[1] When reviewing a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7), we consider must consider the documentary evidence in a light most favorable to the nonmoving party. *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). If there is a relevant factual dispute, summary disposition is not appropriate. *Id*.

-1-

reasonably prudent manner, not in excess of the posted speed limit, while observing the roadway for other motor vehicles and pedestrians and maintaining awareness of reasonably foreseeable hazards." The majority further acknowledges that "a high likelihood of injury from the collision existed because of where plaintiff positioned the bucket[.]" But the majority states that "it is questionable that a driver would have a duty to look up from the roadway to see, perceive, and react to obstacles that might impact the top of the bus" and concludes that Lewis did not owe any duty under the circumstances. I respectfully disagree.

The incident happened at approximately 6:30 a.m. While the evidence reveals that it was dark outside with light rain, it is undisputed that streetlights illuminated the area. It is further undisputed that Ong was wearing a fluorescent green sweatshirt with reflectors on it at the time of the incident. Although the bucket truck was parked on the other side of the median, it is undisputed that it had flashing amber lights activated at the time of the incident. The evidence also reveals that Lewis operated the bus with the visor down, which a trier of fact could conclude lowered her visibility of objects in front of and within the height of the bus. Additionally, there was an orange construction sign on the right-hand curb of the northbound lane of Old Woodward Avenue before Ong's work zone. Although there is no evidence that the construction sign was related to the work performed by Ong in the bucket truck, the sign warned drivers that they were entering a work zone and they should be on the lookout for potential hazards.

In response to defendants' motion for summary disposition, Ong presented a report and deposition testimony from Timothy Robbins.[2] Robbins offered his expert opinion on visibility, human factors,[3] and vehicle operation. Robbins testified that commercial vehicle drivers must

---

[2] In addition to his curriculum vitae, Robbins provided testimony regarding his qualifications, certifications, and accreditations:

> I'm a police officer since 1995, a traffic crash reconstructionist trained through the Michigan State Police since 2002, an accident investigator trained through and with the Michigan State Police since 1999. Been a paramedic.· I started EMS in 1990.· I got my medic's license somewhere between that time and '92, '93 I believe.· It might be sooner.· And I have well over 1400 hours of crash reconstruction training and seminars including the mechanism of injury training through my paramedic[']s license.
>
> \* \* \*
>
> Accredited through ACTAR, Accreditation Commission for Traffic Accident Reconstruction.· I'm a licensed police officer in Michigan, licensed paramedic in Michigan, obviously a licensed driver in Michigan.

[3] Robbins defined human factors as

> essentially the human side of a crash . . . and that can be broken down into multiple facets including visibility, how we see, how we perceive, how we react, what

look "12-15 seconds down the road" and must maintain "a clear path of travel for the entire height of their vehicle," not "just down the road but they're charged with looking up as well as it states . . . in the Michigan [Commercial Driver's License] manual." In his report, Robbins quoted various sections from the 2019 edition of the Michigan Commercial Driver's License Manual provided by the Michigan Secretary of State to establish the duty of care required for safe operation of a commercial motor vehicle. For example, "2.7.4 – Space Overhead" warns of the hazards of striking overhead objects and the importance of ensuring proper overhead clearance. And "2.8.1 – Importance of Seeing Hazards" describes various hazards and warning signs to educate commercial drivers on observing hazards and being prepared to act. Additionally, "2.8.2 – Hazardous Roads" warns that work zones are hazardous because "[w]orkers and construction vehicles may get in the way." Robbins testified that a commercial driver must do more than simply observe the roadway ahead; a commercial driver's duties includes "watching the space above the road" and "looking for low hanging objects," especially if there is evidence of construction in the vehicle's path. Robbins explained

> your safe space is both in front, behind the right, to your left as well as above.· Essentially it is the space around your vehicle that can be hazards which includes elevation.· It's just not the road in front of you but what's above the road in front of you.

Robbins testified that commercial vehicle drivers "should always be watching the space above the road . . . looking for low hanging objects, and they should be looking even harder when there is evidence of construction in [their] path." Robbins opined that Lewis did not use "safe space management" because "the bucket was there to be seen" and it "was at least silhouetted," but "she didn't see it and she hit it."

The majority rejects Robbins's testimony, characterizing it as "hypothetical, speculative, and conjectured[.]" I respectfully disagree. Robbins relied on the 2019 edition of the Michigan Commercial Driver's License Manual to support his testimony regarding a commercial driver's duties. also relied on the 1997 edition of the Commercial Vehicle Preventable Accident Manual,[4] which is recognized by the Federal Motor Carrier Safety Administration. Moreover, defendants did not challenge Robbins's qualifications or the admissibility of his opinion in the trial court. In fact, defendants attached Robbins's report to their motion for summary disposition and simply attacked the facts that he relied on to support his opinion, arguing that "a reasonable driver like Lewis" would not have been placed "on notice of a hazard above the Northbound traffic lane." SMART, and the majority, appear to confuse the question of "duty" with that of whether the duty was breached. This is an argument about breach, not duty. And this is a pure credibility contest between plaintiff's highly qualified and unchallenged expert and defendants' experts. "Disagreements pertaining to an expert witness's interpretation of the facts are relevant to the weight of that testimony and not its admissibility." *Lenawee Co v Wagley*, 301 Mich App 134,

---

> reactions are appropriate, the time it takes for those reactions and perceptions to take place, so physical actions during those perception reactions.

[4] Uzgiris, et al, *Commercial Vehicle Preventable Accident Manual* (Neenah: J.J. Keller & Associates, Inc., 1997).

166; 836 NW2d 193 (2013). In deciding a motion for summary disposition, "[c]ourts may not make factual findings or weigh the credibility of the evidence . . . ." *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998). The majority has overstepped our reviewing authority by rejecting the testimony of plaintiff's unchallenged expert in favor of defendants' experts.

I also respectfully disagree with the majority that there is no genuine issue of material fact that Ong's bodily injuries were caused by or a consequence of Lewis's negligent operation of the SMART bus. The majority mistakenly holds Ong to a higher standard by requiring him to establish that Lewis's conduct constitutes "the" proximate cause of his injuries. This heightened standard only applies to Ong's claims against Lewis, individually. See MCL 691.1407(2)(c) (stating that a governmental employee is not responsible in tort for personal injuries unless the governmental employee's conduct amounts to "gross negligence that is the proximate cause of the injury or damage.") The motor-vehicle exception to governmental immunity holds a governmental agency liable for bodily injury or property damage "resulting from the negligent operation" of a government-owned vehicle. MCL 691.1405. A negligence claim requires proof of four elements: (1) duty, (2) breach, (3), causation, and (4) damages. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012). "[I]t is well-established that the proper standard for proximate causation in a negligence action is that the negligence must be 'a proximate cause' not 'the proximate cause.' " *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 497; 791 NW2d 853 (2010).

Finally, I respectfully disagree with the majority's conclusion that there is no genuine issue of material fact that Ong was more than 50% at fault or the accident, barring him from recovery pursuant to MCL 500.3135(2)(b).

> The standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant, and the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration. In addition, proximate cause is an issue for the jury, provided that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence. [*Rodriquez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991) (citations omitted).]

The majority finds that Lewis's "degree of fault paled in comparison to plaintiff's extraordinary willful disregard for his own safety" and that plaintiff's "conduct constituted *the* proximate cause of his injuries." (emphasis added). Once again, the majority mistakenly applies the heightened burden of "the" proximate cause to plaintiff's negligence claim against SMART. Further, I believe "that there is evidence from which reasonable persons could draw a fair inference that the injury was caused by negligence." *Rodriguez*, 191 Mich App at 488. Streetlights illuminated the area, Ong was wearing a fluorescent green sweatshirt with reflectors on it, the bucket truck had flashing amber lights activated, there was an orange construction sign on the right-hand curb of the northbound lane of Old Woodward Avenue before Ong's work zone, and Lewis was operating the bus with the visor down. Viewing the evidence in the light most favorable to Ong, a reasonable juror could conclude that Ong and the bucket were visible to a driver in

Lewis's position, that Lewis breached her duty by failing to see Ong or the bucket, and that her negligence was more than 50% greater than Ong's negligence, if any.

In sum, I concur in the result that Lewis is entitled to governmental immunity under MCL 691.1407(2).  But I would affirm the trial court's denial of summary disposition to SMART. Accordingly, I concur in part and dissent in part.


/s/ Sima G. Patel