*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANE SWIFT and ROBIN MODOCK,

Plaintiffs-Appellees,

v

CITY OF DETROIT,

Defendant-Appellant,

and

NIKEDA ABNER,

Defendant.

UNPUBLISHED
November 21, 2023

No. 361454
Wayne Circuit Court
LC No. 21-004710-NI

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendant City of Detroit appeals by right the trial court's denial of its motion for summary disposition.[1] Considering the evidence in the light most favorable to plaintiffs, Diane Swift and Robin Modock, we conclude that there are genuine issues of material fact whether defendant Nikeda Abner negligently operated the city's bus, and whether Abner's negligent operation of the bus was a proximate cause of plaintiffs' injuries. We affirm.

## I. BACKGROUND

On July 30, 2019, plaintiffs were passengers on a bus owned by the city and operated by Abner. While the bus was traveling southbound on Woodward, it struck the rear of a small sport utility vehicle (SUV). Both plaintiffs sustained injuries. After the collision, the SUV fled the scene. Neither the driver nor the SUV were identified or located.

---

[1] The trial court granted defendant Nikeda Abner's motion for summary disposition in the same order in which it denied the city's motion. Abner is not a party to this appeal.

On the same date as the accident, Abner completed a "Transit Accident and Crime Report" for the city's Department of Transportation. According to Abner's written statement, the accident occurred when the SUV came from the left side of the bus and turned right in front of the bus, causing the bus to collide with the back bumper of the SUV. Abner further indicated that she was traveling 35 miles per hour at the time of the accident.

Plaintiffs commenced the instant action alleging, in pertinent part, that they sustained injuries as a result of Abner's negligent operation of the city's bus. Plaintiffs alleged that Abner "failed to stop at a safe distance causing an accident." Plaintiffs alleged that Abner violated various statutory and common law duties in operating the bus in a negligent manner, and that Abner's negligence caused the accident and plaintiffs' injuries. Defendants answered the complaint, denying that Abner was negligent, grossly negligent, or even at fault in the accident, asserting that Abner "was cut off by a hit and run driver." Relevantly, the city asserted that it was immune from liability under § 1607 of the Governmental Tort Liability Act (GTLA), MCL 691.1401, *et seq*.

Abner testified that the accident occurred "around rush hour" at approximately 4:00 p.m. The bus was "extremely full" and passengers were standing. She was familiar with the route, which she described as "busy." She had driven the route on numerous occasions. She maintained that she was looking forward, and denied that she was distracted, at the time of the accident. Abner explained that she was "getting ready to pull into the stop, which is in the next block, and a car from my left side just shoots right in front of me to make a turn . . . and I hit the back of the car, it stopped and then kept going." She did not know where the SUV came from other than "the left side of the bus" on the driver's side. Abner admitted that she did not do anything to avoid the accident, stating that she "didn't know it was happening when it happened." She maintained that there was nothing that she could have done to avoid the accident. She stated that she typically maintained a distance of two cars between the bus and a vehicle in front of her, but admitted that there was not that much distance between the bus and the SUV prior to the impact. Abner was unable to describe the SUV, other than it was "an orangy-brown" small SUV. The SUV pulled off before she could obtain its license plate. She did not get a look at the driver of the SUV, and did not know how many occupants were in it.

Modock was standing on the right side of the bus at the time of the accident. She described the accident as follows:

> I was talking on the phone to my cousin and I told her, ["]The bus driver is going too fast.· I have to get off the phone, because I need to get a better grip of holding onto the rail.["] About a minute or two later, I heard the bus driver make a panicky noise, and when I looked, she hit a red SUV, glass shattered and I was on the floor.

Modock stated that, just before the collision, the SUV "was going past the bus.· It was like going in front of the bus, but it was going to the right." She clarified that the SUV "was right in the center of the bus" when she looked just before the impact. She did not see the damage to the SUV or the bus, nor did she see the driver of the SUV or its license plate. Modock estimated that Abner "was probably going at least 50 [miles per hour]" just before the impact. This estimate was based on Modock's experience as a driver.

Swift testified that she was seated in the front of the bus directly behind the driver. She estimated that the bus was traveling at "maybe 50 miles per hour, 55" just before the collision. Swift's estimate was based on her experience of riding the bus daily, and the fact that the bus was passing up cars and other busses. She stated that Abner "was driving faster than the bus normally goes." At the time, Swift was grateful that the driver was "going fast" because "[t]his particular day the bus was running late" and it meant that she would get to work on time. Immediately before the collision, Swift heard a loud screech of tires as Abner slammed on the brakes, then Abner shouted, "Hold on guys!" Swift felt an impact to the front of the bus and heard glass shattering. The impact caused her body to strike various parts of the bus and then slid to the floor of the bus. She did not see any other vehicles that may have been involved in the accident.

Following discovery, defendants filed a joint motion for summary disposition under MCR 2.116(C)(7). Relevant to this appeal, the city asserted that Abner did not negligently operate the bus. The city argued that Abner's testimony established that an unknown vehicle turned directly in front of the bus and there was nothing that Abner could have done to avoid the accident. The city contended that plaintiffs had limited personal knowledge of how the accident happened and thus were unable counter Abner's testimony to create a question of fact as to negligence. The city further asserted that plaintiff's testimony that Abner was speeding was speculative. But, even if there was a question of fact whether Abner was speeding, plaintiffs were unable to establish that but for Abner's alleged speeding, the accident would not have happened.

In response, plaintiffs argued there was a question of fact whether Abner negligently operated the bus. Plaintiffs asserted that the posted speed limit where the accident occurred was 30 miles per hour, but Abner admitted that she was traveling 35 miles per hour at the time of the accident. Because Abner admitted that she was travelling at least 5 miles over the speed limit, plaintiffs maintained there was sufficient evidence that she was speeding, regardless of plaintiffs' testimony. They further argued that plaintiffs' testimony contradicted Abner's testimony as to how the accident happened. Finally, plaintiffs maintained that there was a genuine issue of material fact whether Abner's negligent operation of the bus was a proximate cause of the plaintiff's injuries.

At the hearing on defendants' motion , the trial court denied the motion with respect to the city, stating:

> Reasonable minds could differ as to whether the bus driver was negligent such that the accident could have been avoided if she was driving the speed limit. So the exception to governmental immunity applies there.

This appeal followed.

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Summary disposition under MCR 2.116(C)(7) is proper when a claim is barred because of immunity granted under the law. *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012). We consider all documentary evidence in a light most favorable to the nonmoving party

under MCR 2.116(C)(7). *Id*. "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Id*. (quotation marks omitted). "But when a relevant factual dispute does exist, summary disposition is not appropriate." *Id*. In deciding a motion for summary disposition, "[c]ourts may not make factual findings or weigh the credibility of the evidence . . . ." *Lytle v Malady*, 458 Mich 153, 176; 579 NW2d 906 (1998).

## III. ANALYSIS

The city argues that the trial court erred by denying its motion for summary disposition because it was entitled to governmental immunity and the motor-vehicle exception set forth in MCL 691.1405 was inapplicable. We disagree.

The GTLA grants a governmental agency immunity from tort liability if the agency was engaged in the exercise or discharge of a governmental function, subject to certain enumerated exceptions. MCL 691.1407(1); *Bernardoni v City of Saginaw*, 499 Mich 470, 473; 886 NW2d 109 (2016). One of these is the motor-vehicle exception, which holds a governmental agency liable for bodily injury or property damage "resulting from the negligent operation" of a government-owned vehicle. MCL 691.1405. A negligence claim requires proof of four elements: (1) duty, (2) breach, (3), causation, and (4) damages. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 433; 824 NW2d 318 (2012).

In this case, it is undisputed that Abner is a governmental employee, that she was driving a government-owned vehicle at the time of the accident, that she rear-ended a vehicle in front of her, and that plaintiffs sustained injuries. The city, however, contends that there is no genuine issue of material fact that Abner did not negligently operate the bus. We disagree.

It is well established that Michigan drivers have many statutory and common law duties:

> Many duties are imposed upon the drivers of motor vehicles upon public streets and highways. Some result from express statutory requirements to observe certain speed limits, to stop for certain traffic signals and signs, or, under certain circumstances, to yield the right-of-way, violations of which constitute negligence per se. Other duties are inherent in the exercise of that due care which connotes freedom from negligence as defined by the courts. Among the latter are the duties to maintain a reasonable and proper lookout, to see what is plainly there to be seen and give it due heed, and, before proceeding, from a suitable observation of conditions then and there existing, to form a reasonable belief that it is safe to proceed. [*City of Kalamazoo v Priest*, 331 Mich 43, 47; 49 NW2d 52 (1951) (citation omitted).]

"[E]vidence of violation of a penal statute creates a rebuttable presumption of negligence." *Klanseck v Anderson Sales & Serv, Inc*, 426 Mich 78, 86; 393 NW2d 356 (1986); see also *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 487-488; 478 NW2d 914 (1991) ("Violation of a statute by a plaintiff or a defendant creates a prima facie case from which a jury may draw an inference of negligence."). Both MCL 257.627 and MCL 257.628(9) proscribe operating a motor

vehicle at speeds faster than the established limit. Specifically, MCL 257.627(1), which is often referred to as the "basic speed law" or "assured, clear distance ahead" rule, provides:

> A person operating a vehicle on a highway shall operate that vehicle at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface, and width of the highway and of any other condition then existing. A person shall not operate a vehicle upon a highway at a speed greater than that which will permit a stop within the assured, clear distance ahead.

A driver's duty to maintain a speed that will permit him to stop in the "assured clear distance ahead" applies "with equal force when a driver runs into an object whether it is moving or at rest and whether he is overtaking the object or the object is approaching toward him." *Winslow v. Veterans of Foreign Wars Nat'l Home*, 328 Mich 488, 493; 44 NW2d 19 (1950) (cleaned up).

Based on her driving experience, Modock estimated that Abner "was probably going at least 50 [miles per hour]" just before the impact. And based on her experience of riding the bus daily, Swift estimated that the bus was traveling at "maybe 50 miles per hour, 55" just before the collision. Swift also noted that the bus was passing up cars and other busses, and Abner "was driving faster than the bus normally goes." Plaintiffs asserted in their response to defendants' motion for summary disposition that the posted speed limit was 30 miles per hour on Woodward. The city did not refute this assertion in its reply brief or during oral argument before the trial court. Pursuant to Abner's own admission that she was traveling 35 miles per hour at the time of the accident, there is no dispute that Abner was driving at least 5 miles per hour over the posted speed limit.[2] And, based on plaintiffs' testimony, perhaps as much as 25 miles per hour over the posted speed limit. Abner's admission to violating the basic speed laws establishes a prima facie case from which a jury may infer that she acted negligently. See *Klanseck*, 426 Mich at 86; *Rodriguez*, 191 Mich App at 487-488.

Further, Abner admitted that she took no evasive action to attempt to avoid the collision. Although Abner claimed that the SUV pulled in front of the bus and maintained that she had no time to react, a jury could discredit Abner's self-serving testimony. Abner also conceded that the accident occurred during rush hour, on a busy route, and that she did not keep a safe distance between the bus and the SUV in front of the bus. MCL 257.627(1) requires a motorist to maintain an assured, clear distance ahead. Viewing the evidence in the light most favorable to plaintiffs, we conclude that there are material questions of fact whether Abner negligently operated the city's bus.

The city also argues that, even assuming that Abner was speeding at the time of the accident, there is no genuine issue of material fact that Abner's negligence was not "the" proximate cause of their injuries. The city mistakenly relies on the wrong standard. This heightened standard only applies to plaintiffs' claims against Abner, individually. See MCL 691.1407(2)(c) (stating that a governmental employee is not responsible in tort for personal injuries unless the governmental employee's conduct amounts to "gross negligence that is the proximate cause of the

---

[2] The city conceded this fact during oral argument on appeal.

injury or damage.")  "[I]t is well-established that the proper standard for proximate causation in a negligence action is that the negligence must be 'a proximate cause' not 'the proximate cause.' " *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 497; 791 NW2d 853 (2010).  The motor-vehicle exception requires that plaintiffs prove that their injuries "result[ed] from" the negligent operation of a government-owned vehicle.  MCL 691.1405.  In construing the "resulting from" language in MCL 691.1405, our Supreme Court held "result" means, "To occur or exist as a consequence of a particular cause[;] To end in a particular way[;] The consequence of a particular action, operation or course; outcome." *Robinson v Detroit*, 462 Mich 439, 456; 613 NW2d 307 (2000) (cleaned up; alterations in original).  Proximate cause is a question for the jury to decide unless reasonable minds could not differ regarding the issue.  *Nichols v Dobler*, 253 Mich App. 530, 532; 655 NW2d 787 (2002).  In this case, Abner admitted that she was driving at least 5 miles per hour over the posted speed limit, she took no evasive action to attempt to avoid the collision, and she did not maintain an assured, clear distance ahead while driving during rush hour on a busy route.  The collision that resulted is the kind of injury that such actions produce.  We conclude that there are genuine issues of fact regarding whether Abner's conduct was a proximate cause of the accident.

Affirmed.


/s/ Sima G. Patel
/s/ Michelle M. Rick