*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTIAN BAKER,

        Plaintiff/Appellant/Cross-Appellee,

v

HURON HOUSE, INC.,

        Defendant/Appellee/Cross-Appellant.

UNPUBLISHED
December 8, 2022

No. 358177
St. Clair Circuit Court
LC No. 19-000688-NO

Before: GLEICHER, C.J., and SERVITTO and YATES, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court order granting summary disposition in defendant's favor under MCR 2.116(C)(10). Defendant cross-appeals the same order, arguing that even if the trial court's decision was erroneous, an alternate basis to affirm the decision exists. We affirm.

Defendant is a halfway house and is both a voluntary residential facility, and one that the courts use for placement of criminal defendants as part of or instead of a jail sentence or probation. Plaintiff entered defendant's facility in June 2018 and was housed in a bedroom located two to three doors down from the front office of defendant. There are security cameras in all areas of the facility with the exception of residents' bedrooms, the bathrooms, and the lower level laundry room. A resident advisor is generally in the front office and there are monitors in the office on which the advisor is able to view the facility areas covered by security cameras.

On July 18, 2018, plaintiff fell at the facility and incurred serious injuries. Specifically, plaintiff suffered a concussion, brain bleed, a fractured skull, and a fractured shoulder blade. Plaintiff spent a significant amount of time in the hospital and in a rehabilitation facility upon his discharge from the hospital. He also required surgery on his shoulder.

Plaintiff asserts that he fell in his bedroom because he was ill and that he told an employee of defendant that he was ill prior to the fall, but that the employee ignored his illness and request for medical attention. According to plaintiff, it was only after his fall that defendant's employees arranged to take him to the hospital, where they dropped him off on his own. Plaintiff alleged in his complaint that defendant's employees and thus defendant, under the doctrine of respondeat

superior, were negligent and/or grossly negligent in failing to call for medical help when plaintiff initially reported feeling unwell, for delaying obtaining medical help for plaintiff after he reported that he fell and hit his head, and in dropping plaintiff off at the hospital alone after his fall.

Defendant moved for summary disposition under MCR 2.116(C)(10) asserting that plaintiff could not establish a prima facie case of negligence against it because (1) defendant did not breach a legal duty to plaintiff, (2) plaintiff failed to and cannot establish that his injuries occurred as a result of defendant's conduct, (3) plaintiff failed to and cannot provide evidence that defendant's conduct was the factual or proximate cause of his injuries. According to defendant, plaintiff's claims and arguments are speculative given that plaintiff could not recall the precise time and circumstances under which he incurred his injuries and video surveillance footage of defendant on the date of the incident clearly shows that within ten minutes of plaintiff having requested medical attention, he was transported to the hospital by defendant's employees.

The trial court reviewed the evidence relied upon by both parties and found that conflicting testimony gave rise to material questions of fact as to whether defendant owed plaintiff a duty and whether it breached such a duty. The trial court further found that plaintiff presented only speculation concerning his fall and that there was no evidence presented that could conclusively establish when plaintiff fell (assuming that the fall was the reason for his injuries). According to the trial court, there were multiple theories of when plaintiff fell and there was no way to determine which is more likely to have occurred. Thus, there was no showing that defendant's actions were the cause of plaintiff's injuries. As a result, plaintiff could not establish the proximate cause of his injuries and the trial court thus granted summary disposition in defendant's favor. The trial court later denied plaintiff's motion for reconsideration and this appeal followed.

Plaintiff asserts on appeal that the trial court, in granting defendant's motion for summary disposition, ignored the testimony and circumstantial evidence that supported plaintiff's version of the events. Instead, it erroneously weighed the relative credibility of the witnesses and made inferences in favor of defendant. According to plaintiff, had the trial court viewed the evidence in a light most favorable to plaintiff as it was required to do, it would have found that plaintiff's injuries were a foreseeable consequence of defendant's failure to procure medical aid for plaintiff in a timely manner and that there was a direct causal connection between the delay in obtaining treatment and plaintiff's injuries. We disagree.

We review de novo a trial court's decision regarding a motion for summary disposition. *Bernardoni v City of Saginaw*, 499 Mich 470, 472; 886 NW2d 109 (2016). As stated in *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013):

> In general, MCR 2.116(C)(10) provides for summary disposition when there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A motion brought under MCR 2.116(C)(10) tests the factual support for a party's claim. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing

MCR 2.116(G)(5). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10). *Skinner,* 445 Mich at 161; *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 437; 695 NW2d 84 (2005). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10).

In his complaint, plaintiff set forth a claim of negligence. To establish a prima facie case of negligence, a plaintiff must satisfy the following elements:

(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages. [*Powell-Murphy v Revitalizing Auto Communities Envtl Response Tr*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (citation omitted)]

Because the primary issue on appeal is whether the trial court correctly found that there was no material question of fact concerning causation, our focus will be on that element.

As our Supreme Court explained:

Proximate cause, also known as legal causation, is a legal term of art with a long pedigree in our caselaw.[] Proximate cause is an essential element of a negligence claim.[] It "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences."[] Proximate cause is distinct from cause in fact, also known as factual causation, which "requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred."[] . . . "a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries."[] In a negligence action, a plaintiff must establish both factual causation, i.e., "the defendant's conduct in fact caused harm to the plaintiff," and legal causation, i.e., the harm caused to the plaintiff "was the general kind of harm the defendant negligently risked."[] If factual causation cannot be established, then proximate cause, that is, legal causation, is no longer a relevant issue. [*Ray v Swager*, 501 Mich 52, 63–64; 903 NW2d 366 (2017)]

There can be more than one proximate cause contributing to an injury. *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496–97; 791 NW2d 853 (2010). Thus, the proper standard for proximate causation in a negligence action is that the negligence must be "a proximate cause" not "the proximate cause." *Id*. at 497. In every circumstance, however, the plaintiff bears the burden of establishing proximate cause, i.e., "but for" the defendant's actions, the plaintiff's injury would not have occurred. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 93; 684 NW2d 296 (2004).

A plaintiff may establish proximate cause through circumstantial evidence, but "the mere happening of an unwitnessed mishap neither eliminates nor reduces a plaintiff's duty to effectively demonstrate causation." *Skinner*, 445 Mich at 163. The *Skinner* Court clarified that to be adequate, "a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164. Quoting *Kaminski v Grand Trunk W.R. Co,* 347 Mich 417, 422; 79 NW2d 899 (1956), the *Skinner* Court further explained:

> As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence. [*Skinner*, 445 Mich at 164]

According to *Skinner*:

> at a minimum, a causation theory must have some basis in established fact. However, a basis in only slight evidence is not enough. Nor is it sufficient to submit a causation theory that, while factually supported, is, at best, just as possible as another theory. Rather, the plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. [*Id*. at 164-165]

Thus, "the mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two," and "when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*. (citation omitted). While the evidence need not negate all other possible causes, it must exclude other reasonable hypotheses with a fair amount of certainty because we cannot permit the jury to guess. *Id*. at 166-167 (citations omitted). Consequently, "[w]here the connection between the defendant's negligent conduct and the plaintiff's injuries is entirely speculative, the plaintiff cannot establish a prima facie case of negligence." *Craig ex rel Craig v Oakwood Hosp*, 471 Mich at 93.

At the outset, we note that there are many facts that the parties do not dispute. First, on July 18, 2018, plaintiff attended a brief meeting with his case manager, Todd Herring, at around 7:00 a.m. Second, that plaintiff returned to his bedroom at some point after the meeting and that the resident advisor on duty, Henry Brown, briefly went into plaintiff's bedroom at approximately 8:00 a.m. to wake plaintiff back up. Third, that plaintiff reported to Brown at some point that morning that he was unwell and needed medical attention. Fourth, that plaintiff incurred serious injuries while at defendant's facility on July 18, 2018. Fifth, that plaintiff was taken to the hospital by one of defendant's employees, Erich Godinez, at approximately 9:50 a.m. on that day. Sixth, that after learning of the seriousness of plaintiff's injuries, Godinez watched video surveillance footage of the facility and prepared a handwritten timeline of events that had occurred in the morning hours of July 18, 2018.

Both parties rely on Godinez's timeline of events to support their respective positions. The timeline contains the following information with respect to plaintiff:

6:31 am (walks to bathroom)
6:35 am (walked out of bathroom)
6:35:25 am (walked into bedroom)
6:35:58 am (walked out of room)
6:36:50 am (Tim M. took Baker to see C.M. Todd)
6:50:40 am (walked into Todd's office)
7:11:01 am (walked out of Todd's office filled up coffee pot of water)
7:12:21 am (entered Todd's office with coffeepot)
7:14:27 [am] (walked out of Todd's office)
7:25:43 am (walked up the stairs from laundry room door)
7:26:20 [am] (walked into bathroom)
7:36:18 [am] (walked out of bedroom)
7:36:37 [am] (took phone call in office)
7:37:28 [am] (walked back to bedroom) rm #5
7:53:54 [am] (parolee [redacted] enters room #5)
7:54:50 [am] (" " leaves room #5)
8:02:29 [am] (R.A. Henry Brown talks to Baker in rm #5)
8:02:37 [am] (" " walks out of room #5)
8:03:00 [am] (Baker walks out of rm #5)
8:03:15 (Baker tells staff he's not feeling good)
8:03:37 (walks back into room #5)
9:46 am (walks out of room)
9:47 am (signed out)
9:49 am (went back to his room to get I.D.)
9:51 am (I took Baker to hospital)

In general, the deposition testimony of Brown and Godinez is consistent with the timeline. Brown testified that he went to plaintiff's room to wake him up and when he did so, plaintiff did not say he did not feel well and did not appear ill. Plaintiff agreed that Brown came into his room to wake him up, but testified that he told Brown at that time that he was not feeling well. According to plaintiff, when Brown woke him up, he felt terrible: he could not move his right arm, felt dizzy and disoriented, and had cold sweats. Plaintiff testified, however, that he did not initially tell Brown anything specific about how he felt; he did not elaborate on how or why he did not feel well or ask Brown to call an ambulance or take him to the hospital.

Viewing the above testimony in the light most favorable to plaintiff, plaintiff communicated to Brown that he was not feeling well during the time Brown was in his room, but did not elaborate or ask for medical help at that time.

Brown testified that he went back to his desk after waking plaintiff, and plaintiff came to him later at the front office and said he did not feel well. Brown did not know the specific time plaintiff told him he did not feel well. Plaintiff testified that after Brown left his room, plaintiff lay in bed for another minute, then got out of bed. Plaintiff testified that he almost immediately fell, and believed he lost consciousness because he recalls getting out of bed, but then he is on the

-5-

floor waking up. Plaintiff testified that he did not know what caused him to fall and did not know if he fell backward or forward. Plaintiff further testified that he did not hit anything during his fall and does not recall hitting his head, but that he might have hit his head on the floor.

Plaintiff testified that after he woke up on the floor, he went to the office and talked to Brown. He did not remember what time of the morning he fell, but testified that he went to the office within just a few minutes after Brown had left his room. Plaintiff testified that he told Brown at that time that he was dizzy, could not move his arm, had fallen, and that he needed to go to a hospital or to a doctor. According to plaintiff, his conversation with Brown lasted 15-20 minutes and Brown eventually called Godinez while plaintiff was still at the office.

Viewing the above testimony in a light most favorable to plaintiff, after Brown left his room, plaintiff got out of bed within a few minutes. Plaintiff immediately fell for some unknown reason, perhaps hitting his head on the floor. Plaintiff left his room and began speaking to Brown at the office. While Brown did not know when that conversation occurred, and plaintiff also testified that he did not know the time he went to the office and told Brown that he needed to go to the hospital, plaintiff also testified that it was within two to five minutes after Brown left his room. According to plaintiff, then, he fell between the time when Brown left his room, and when plaintiff walked out of his room two to five minutes later.

Brown testified that he called Godinez, who was in the building, immediately after plaintiff told him he needed to go to the hospital. Godinez testified that when Brown called, he immediately left his office and went outside to his vehicle to meet plaintiff. Plaintiff testified that during his conversation with Brown at the office, Brown called Godinez and then told plaintiff to go outside to Godinez's vehicle. Plaintiff testified that he did not fall after leaving the office and proceeding to the vehicle. According to both Godinez and plaintiff, Godinez took plaintiff to a hospital located within a few miles of defendant and dropped plaintiff off at the emergency room entrance doors. Also, according to both Godinez and plaintiff, plaintiff entered the hospital without incident.

Viewing the above testimony in a light most favorable to plaintiff, plaintiff had a conversation with Brown at the front office within minutes of being woken up, and during the conversation, plaintiff told Brown he needed medical attention. Brown called Godinez, who then came to the office and conversed with Brown, after which Brown told plaintiff to go outside to Godinez's van. Plaintiff then went outside to the vehicle and was transported to the hospital.

There are undoubtedly some conflicts in the deposition testimony. Unfortunately for plaintiff, however, these conflicts do not rise to the level of creating a genuine issue of material fact on the issue of causation. As previously indicated, plaintiff bears the burden of establishing a causation theory with substantial evidence "from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner*, 445 Mich at 164-165. "[T]he mere possibility that a defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two," and "[w]hile the evidence need not negate all other possible causes, it must exclude other reasonable hypotheses with a fair amount of certainty" because we cannot permit the jury to guess. *Id*. at 166-167.

If we accept plaintiff's deposition testimony exactly as it is, then plaintiff was in bed from the time he fell asleep the night before until Brown woke him up around 8:00 a.m. on July 18, 2018. He did not feel well when Brown woke him up, but did not elaborate on how or why he did not feel well and did not request any medical assistance at that time. When Brown left his room, plaintiff got out of bed a minute or so later, fell, then proceeded to the front office, where he engaged in a 15-20 minute conversation with Brown, at the conclusion of which Brown called Godinez and told plaintiff to go outside to Godinez's vehicle. In this case, plaintiff has failed to establish causation of his injuries, because the first time he requested medical assistance was within a couple of minutes after he fell, when he went to the office to speak to Brown, and Brown called Godinez to take plaintiff to the hospital while plaintiff was still at the office. He was then immediately taken to the hospital. There is nothing in plaintiff's deposition testimony to establish that defendant's purported negligence was the proximate cause of plaintiff's injuries.

It is undisputed that plaintiff incurred a serious brain injury that likely affected his memory. When we add in the timeline and take into consideration all of the deposition testimony, it is evident that plaintiff cannot recall all of what happened on July 18, 2018. For example, plaintiff testified that he does not recall meeting with Todd Herring in the morning, before Brown came into his room. Both Brown and Herring testified that such meeting took place. The timeline also shows that plaintiff was taken to Todd Herring's office at 6:36:50 a.m. The timeline further shows plaintiff entering and exiting his room several other times prior to Brown's visit to plaintiff's room, including plaintiff leaving Herring's office at 7:14:27 a.m., coming up the stairs from the laundry room at 7:25 a.m., and taking a phone call in the office at 7:36:37 a.m. All of these actions occurred prior to Brown entering plaintiff's room to wake him at 8:02:29 a.m. but plaintiff recalls none of them.

In addition, plaintiff recalls going to the office to speak to Brown only once, at which time Brown called Godinez. The timeline, however, shows plaintiff speaking with Brown at the office around 8:03 a.m. for less than one minute, then returning to his room, where he remained until 9:46 a.m. At that time, plaintiff again left his room and went back up the office to speak with Brown a second time.

Notably, plaintiff testified that when he went to the office to speak to Brown, he related to Brown that he was dizzy, could not move his arm, and had fallen. Aside from the fall, plaintiff reported feeling the same symptoms immediately upon Brown waking him that he reported to Brown in the office a few minutes later. Because the timeline shows that plaintiff had been up and about for an hour and a half, with at least 10 minutes of that time being in the laundry room and out of camera view prior to the time Brown woke him up, it is entirely plausible that plaintiff incurred some type of injury prior to Brown waking him up. Plaintiff recalls nothing prior to Brown waking him up, so is unable to establish whether he did or did not injure himself prior to Brown waking him.

As indicated by the trial court, another possibility regarding when plaintiff was injured exists. Looking at the timeline, plaintiff was woken by Brown, went to the office less than a minute later to tell Brown he did not feel well, then returned to bed, where he remained for over an hour and a half. If plaintiff has mistakenly testified that he fell almost immediately after Brown left his room when he actually fell after speaking with Brown at the office the first time at 8:03:15 a.m.,

there would be no causation on the part of defendant because plaintiff testified that right after he woke up on the floor, he went to the office to tell Brown and Brown called Godinez.

Plaintiff contends on appeal that he fell after telling Brown at the office at 8:03:15 a.m. that he needed medical attention and that Brown did not call Godinez until around 9:46 a.m. While, again, there is nothing presented to establish that fact (and it is contrary to plaintiff's deposition testimony), if it is true, plaintiff has presented no evidence that the fall caused the injuries for which he now seeks compensation. Plaintiff testified that immediately upon Brown waking him, he felt dizzy and woozy and could not move his right arm. Thus, he experienced symptoms prior to his fall. Plaintiff also could not recall hitting his head on anything when he fell but suggests he *may* have hit his head on the floor when he fell. In his testimony, then, plaintiff is speculating about his fall and speculation is not to be submitted to a jury.

The trial court relied, in part, on *Garabedian v William Beaumont Hosp*, 208 Mich App 473; 528 NW2d 809 (1995) in rendering its decision. In that case, an 87-year old woman was taken to the hospital by her daughter on complaints of a terrible headache and sudden blindness. *Id*. at 474. The daughter was allowed to visit her mother in her hospital room for five minutes each hour and noted that her mother's mental condition deteriorated after she received medication from the hospital. *Id*. The daughter told the nurses that she was concerned that her mother would fall out of the bed, given that the rails on the side of the bed were not up, and the nurses replied that they were watching her. *Id*. The mother thereafter did fall out of bed and broke her hip. *Id*. The mother brought suit against the hospital, asserting that it was negligent. At trial, a nurse testified that the standard of care required the nurses to conduct an ongoing assessment of the mother's mental condition and that if the nurses had done so, it might have indicated the need for some type of intervention and had such intervention occurred, the accident might have been prevented. *Id*.

The trial court granted the defendant's motion for directed verdict because there had been no showing of proximate cause (among other things). *Id*. at 475. This Court affirmed, stating:

> Because plaintiff does not recall how she fell from the bed, and because there were no witnesses to the fall, plaintiff must rely on circumstantial evidence to establish the causal link between defendant's alleged negligence and the harm suffered. *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). "To be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 164. According to [the nurse's] testimony, if plaintiff had been adequately evaluated, the evaluation might have revealed a need for intervention, and that intervention might have prevented plaintiff's injury. Plaintiff's attenuated theory of causation does not establish a reasonable basis for concluding that it is more likely than not that conduct by defendant's employees was the cause of plaintiff's injury. *Id*. at 165. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id*. We cannot conclude that plaintiff's injury is attributable to defendant's alleged failure to evaluate and chart plaintiff's condition. [*Garabedian*, 208 Mich App at 475–76.]

Similarly here, plaintiff testified that he does not know why he fell and does not recall hitting his head. Also, similarly, plaintiff does not recall how he fell and there were no witnesses to the fall such that plaintiff must rely on circumstantial evidence to establish a link between defendant's alleged negligence and his injuries. And, as in *Garabedian*, the circumstantial evidence provided does not establish a reasonable basis for concluding it is more likely than not that Brown's (or another of defendant's employees) conduct was the cause of plaintiff's injury. Indeed, this case presents even more compelling facts upon which to have granted summary disposition in defendant's favor.

As previously stated, if the events occurred exactly as stated in plaintiff's testimony, defendant was not the proximate cause plaintiff's injuries. If we ignore parts of plaintiff's testimony and credit the timeline and other deposition testimony with events that occurred, there are several times at which plaintiff could have fallen and incurred his injuries. There is, of course, the possibility that plaintiff felt unwell upon wakening, and when speaking to Brown at the office at 8:03 a.m. requested medical attention but was denied the same, went back to his room to rest, and then fell upon getting out of his bed around 9:47 a.m., incurring his injuries. There is also a possibility that plaintiff injured himself in some way prior to speaking with Brown at the office at 8:03 a.m. (leading to his complaints of dizziness and inability to move his arm immediately upon being awakened by Brown), and then fell after that conversation, incurring more serious injuries. There is also the possibility that plaintiff injured himself sometime prior to speaking to Brown at 8:03 a.m., then fell at some point after that conversation, but incurred no additional injuries. There is further the possibility that plaintiff just felt generally unwell when he spoke to Brown at the office at 8:03 a.m., then went back to his room and rested and when he later got out of bed at around 9:47 a.m., he fell and incurred all of his injures. Plaintiff having no memory of most of the morning and there being no witnesses to or video recording of any fall, there is simply no way to establish causation on defendant's part. In short, because the evidence does "not exclude other reasonable hypotheses with a fair amount of certainty" *Skinner*, 445 Mich at 166-167, defendant was entitled to summary disposition in its favor. The trial court issued well-reasoned, thoughtful, and analytical opinions both in granting summary disposition to defendant and in denying plaintiff's motion for reconsideration and we find no meritorious reason to disturb the opinions on appeal.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto
/s/ Christopher P. Yates